**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CLIFFORD KLAIBER,<br><br>Plaintiff,<br><br>v.<br><br>P.A. ATHERTON, *et al.*,<br><br>Defendants. | No. 4:26-CV-00855<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**SEPTEMBER 9, 2026**

Plaintiff Clifford Klaiber filed the instant *pro se* Section 1983[1] lawsuit, alleging constitutional violations by officials at the State Correctional Institution in Dallas, Pennsylvania (SCI Dallas), related to his medical care. Because Klaiber fails to state a Section 1983 claim upon which relief may be granted, the Court will dismiss his federal claims pursuant to 28 U.S.C. § 1915A(b)(1) but will grant him leave to amend.

## I. BACKGROUND

At all times relevant, Klaiber was incarcerated at SCI Dallas. On August 21, 2025, he was seen in the medical department for complaints of "hard spots" on his

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

foot and an "eczema rash" on his neck.[2] At this appointment, he was treated by medical provider "John Doe," who explained that the hard spot on his foot was "callouses" and prescribed Vitamin E lotion as treatment.[3] Klaiber further claims that P.A. Atherton prescribed 20 pills of "Sulfatrim" to treat an abscess on his neck.[4]

On August 29, 2025, upon complaining to a corrections officer that he was experiencing headaches, diarrhea, "shakes," and nausea, Klaiber was sent to the prison infirmary.[5] After spending two days in the infirmary and exhibiting trace amounts of blood in his urine, he was transferred to an outside hospital.[6]

According to Klaiber, at the hospital, he was informed that his liver and kidneys had "shut down," and he was also diagnosed with a bleeding ulcer in his stomach and pneumonia.[7] Klaiber alleges that he was told these issues were caused by the Sulfatrim prescribed by P.A. Atherton, which was an "incorrect medication."[8] Klaiber avers that he had to undergo dialysis, a blood transfusion,

---

2 Doc. 1 ¶ 8.

3 *Id.*

4 *Id.*; Doc. 1-1. In his complaint, Klaiber alleges that the medication P.A. Atherton prescribed was Sulfatrim. *See* Doc. 1 ¶ 8. In his September 12, 2025 grievance, which he attached to his complaint, he states that he was prescribed Bactrim. *See* Doc. 1-1. Both Sulfatrim and Bactrim are brand names for an oral tablet that combines sulfamethoxazole and trimethoprim, which medication is generally used to treat infections. *See* MAYO CLINIC, *sulfamethoxazole and trimethoprim (oral route)*, https://www.mayoclinic.org/drugs-supplements/sulfamethoxazole-and-trimethoprim-oral-route/description/drg-20071899 (last visited Sept. 3, 2026).

5 Doc. 1 ¶ 9.

6 *Id.*

7 *Id.* ¶ 10.

8 *Id.*; Doc. 1-1.

and surgery at the hospital.[9] On September 11, 2025, he was released from the hospital and returned to SCI Dallas.[10] The next day, he filed a formal grievance alleging "Negligence and Medical Malpractice" by the "medical staff."[11]

After attempting, unsuccessfully, to exhaust his claims through the prison grievance system, Klaiber lodged the instant Section 1983 complaint in this Court in April 2026.[12] He sues four defendants: P.A. Atherton, two unidentified "John Doe" defendants in the SCI Dallas medical department, and Grievance Coordinator Ms. Verbinski.[13] Klaiber appears to assert a claim of Eighth Amendment deliberate indifference to serious medical needs as well as several state-law tort claims against the medical providers.[14] He also asserts a First Amendment retaliation claim against Grievance Coordinator Verbinski.[15] His complaint is presently before the Court for screening as required by 28 U.S.C. § 1915A(a).

## II. STANDARDS OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," *pro se* prisoner complaints targeting governmental entities, officers, or employees.[16] One basis for dismissal at the screening stage is if the complaint "fails to state a claim

---

9 Doc. 1 ¶ 10.
10 *Id.* ¶ 11.
11 *Id.* ¶ 12; Doc. 1-1.
12 *See generally* Doc. 1.
13 *Id.* ¶¶ 4-6.
14 *Id.* ¶¶ 16, 18.
15 *Id.* ¶ 17.
16 *See* 28 U.S.C. § 1915A(a).

upon which relief may be granted[.]"[17] This language closely tracks Federal Rule of Civil Procedure 12(b)(6). Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).[18]

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[19] The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[20] In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[21]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[22] At step one, the court must "tak[e] note of the elements [the]

---

17 *Id.* § 1915A(b)(1).

18 *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *O'Brien v. U.S. Fed. Gov't*, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (per curiam) (nonprecedential); *cf. Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).

19 *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).

20 *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

21 *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

22 *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).

plaintiff must plead to state a claim."[23] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[24] Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[25] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[26]

Because Klaiber proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[27]

## III. DISCUSSION

Upon review of Klaiber's complaint, he fails to state a Section 1983 claim upon which relief may be granted. The Court will address his pleading deficiencies in turn.

### A. Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*."[28] Rather, a Section

---

23 *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
24 *Id.* (quoting *Iqbal*, 556 U.S. at 679).
25 *Id.* (quoting *Iqbal*, 556 U.S. at 679).
26 *Iqbal*, 556 U.S. at 681.
27 *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).
28 *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (affirming same principle in *Bivens* context).

1983 plaintiff must aver facts that demonstrate "the defendants' personal involvement in the alleged misconduct."[29] Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through allegations of "personal direction" or of "actual knowledge and acquiescence"; however, such averments must be made with particularity.[30] Furthermore, it is equally settled that involvement in the post-incident grievance process alone does not give rise to Section 1983 liability.[31]

Klaiber sues four Defendants, yet he only discusses the personal involvement of three of them. Klaiber names two "John Doe" defendants in the SCI Dallas medical department, but he only discusses treatment by one of those unidentified providers on August 21, 2025. To plausibly plead a Section 1983 claim, Klaiber must specify each Defendant's personal involvement in the alleged constitutional misconduct in order to state a claim against them. He does not do so for the second John Doe medical defendant. Accordingly, the Court must dismiss any Section 1983 claim against the second "John Doe" defendant pursuant to 28 U.S.C. § 1915A(b)(1) for lack of personal involvement.

---

29 *Dooley*, 957 F.3d at 374 (citing *Rode*, 845 F.2d at 1207).

30 *Id.* (quoting *Rode*, 845 F.2d at 1207).

31 *See id.* (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance"); *Lewis v. Wetzel*, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential); *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").

### B. Eighth Amendment Medical Indifference

Klaiber does not explicitly state that he is suing any Defendant for deliberate indifference to serious medical needs, but he does reference the Eighth Amendment.[32] To the extent Klaiber is attempting to plead this constitutional tort, he has not done so.

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."[33] To state an Eighth Amendment deliberate indifference claim regarding inadequate medical care, a plaintiff must plausibly allege that "(1) he had a serious medical need, (2) the defendants were deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff."[34] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[35]

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment,

---

[32] *See* Doc. 1 ¶ 16.
[33] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).
[34] *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023) (citation omitted); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).
[35] *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

or denial of reasonable requests for treatment resulting in suffering or risk of injury.[36] Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain."[37] Claims sounding in mere medical negligence will not suffice.[38]

The Court will assume that Klaiber has stated a serious medical need with respect to his hospitalization and the diagnoses he received at that time. Nevertheless, any Eighth Amendment medical indifference claim fails as to the other elements.

The gravamen of the instant complaint is that Klaiber was seen in the SCI Dallas medical department on one occasion and prescribed an antibiotic by P.A. Atherton that resulted in serious, unintended side effects. Initially, the Court notes that this is the *only* conduct alleged by Klaiber that could have caused his serious medical harm, so he clearly has failed to state an Eighth Amendment medical indifference claim against the two John Doe defendants due to an absence of causation.

However, even with respect to this single allegation against P.A. Atherton, it is plainly a medical malpractice claim, not a constitutional one. Klaiber alleges that P.A. Atherton negligently prescribed the wrong medication on August 21,

---

36 *See Durmer v. O'Carroll*, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting *Lanzaro*, 834 F.2d at 346).
37 *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).
38 *Rouse*, 182 F.3d at 197.

2025, thus causing Klaiber's hospitalization and injuries. That is a quintessential claim of medical malpractice, not "unnecessary and wanton infliction of pain." This conclusion is further bolstered by Klaiber's own complaint and attached grievance, in which his allegations almost exclusively utilize terms such as "negligence," "medical malpractice," and "duty of care." Nothing in Klaiber's complaint comes close to alleging deliberate indifference to serious medical needs by any medical Defendant.

In sum, while Klaiber's allegations may implicate professional negligence by P.A. Atherton, they do not plausibly allege deliberate indifference and therefore do not state a constitutional violation.[39]

### C. First Amendment Retaliation

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system."[40] To state a First Amendment retaliation claim, a plaintiff must plausibly plead that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and

---

39 *See Rouse*, 182 F.3d at 197.

40 *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)).

(3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.[41]

Klaiber alleges that Grievance Coordinator Verbinski retaliated against him for filing a grievance by denying that grievance. The Court clarifies that Verbinski actually rejected Klaiber's grievance on procedural grounds; she did not deny the grievance on the merits.[42] Even assuming the grievance was denied, Klaiber's retaliation claim fails because the denial of a grievance is not an actionable adverse action, as it would not deter a person of ordinary firmness from exercising their First Amendment rights.[43] Thus, Klaiber's retaliation claim against Grievance Coordinator Verbinski must be dismissed pursuant to Section 1915A(b)(1).

### D. Official Capacity Claims

Klaiber sues all Defendants in their individual and official capacities.[44] However, any official capacity claim seeking monetary damages from state officials is barred by Eleventh Amendment sovereign immunity.

---

41 *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).

42 *See* Doc. 1-2 (labeled "Rejection Form," stating that "[f]ailure to list a specific date of incident allows me to reject the grievance in accordance with the DC Admin 804").

43 *See Owens v. Coleman*, 629 F. App'x 163, 167 (3d Cir. 2015) (nonprecedential) ("The denial of grievances is not an 'adverse action' for retaliation purposes.") (citing *Burgos v. Canino*, 641 F. Supp. 2d 443, 455 (E.D. Pa. 2009), *aff'd per curiam*, 358 F. App'x 302, 306-07 (3d Cir. 2009)); *Porter v. Allegheny County*, No. 20-cv-1588, 2023 WL 2586037, at *6 (W.D. Pa. Mar. 21, 2023); *Nifas v. Coleman*, No. 10-cv-1486, 2012 WL 707063, at *7 (W.D. Pa. Feb. 9, 2012); *Alexander v. Forr*, No. 3:04-cv-0370, 2006 WL 2796412, at *3 n.4 (M.D. Pa. Sept. 27, 2006).

44 *See* Doc. 1 ¶ 7.

The Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or citizens of foreign states—brought against a state.[45] This immunity from private suit extends to state agencies as well as state officials acting in their official capacity, because such lawsuits are essentially civil actions "against the State itself."[46] States may waive this immunity if they choose, but Pennsylvania has explicitly not waived its immunity with respect to claims brought under Section 1983.[47] There are two exceptions to the Eleventh Amendment's bar to private suits against nonconsenting states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue state officers for *prospective* injunctive and declaratory relief."[48]

Klaiber seeks nominal, compensatory, and punitive damages. To the extent these damages are sought against Defendants in their official capacities, such claims are barred by Eleventh Amendment sovereign immunity. Additionally, Klaiber's request for declaratory relief in the form of a declaration that his constitutional rights were violated seeks retrospective, rather than prospective,

---

45 U.S. CONST. amend. XI; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).

46 *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

47 *See* 42 PA. CONS. STAT. § 8521(b); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).

48 *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998) (emphasis added) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).

relief. Accordingly, any official capacity claim must be dismissed pursuant to Section 1915A(b)(1) as well.

### E. State-Law Claims

Klaiber asserts several state-law tort claims against the medical Defendants, including negligence, medical malpractice, and possibly negligent infliction of emotional distress. However, because all federal Section 1983 claims must be dismissed, the Court declines to exercise supplemental jurisdiction over Klaiber's related state-law claims.[49]

### F. Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."[50] Klaiber will be granted limited leave to amend in the event that he can plead facts that would plausibly state a Section 1983 claim.

Several claims, however, will be dismissed and leave to amend them will be denied. The Court will dismiss with prejudice any First Amendment retaliation claim against Grievance Coordinator Verbinski, as the denial of a grievance is not

---

49 *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (explaining general rule that if all federal claims are dismissed before trial, courts should likewise dismiss pendent state-law claims); *Shaffer v. Bd. of Sch. Dirs. Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir. 1984) (explaining that, absent "extraordinary circumstances," supplemental jurisdiction over state-law claims should be declined "where the federal claims are no longer viable" (citation omitted)).

50 *Grayson*, 293 F.3d at 114.

an actionable adverse action for a retaliation claim. Additionally, all official capacity claims for money damages will be dismissed without leave to amend, as they are barred by Eleventh Amendment sovereign immunity. Granting leave to amend these claims would be futile.

If Klaiber chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without reference to any previous pleadings. The amended complaint should set forth his claim or claims in short, concise, and plain statements, and in sequentially numbered paragraphs (much like his original complaint). Klaiber must leave one-inch margins on all four sides of his pleading.[51] Any exhibits or documents he wishes to present should be attached to his amended complaint. Klaiber *may not* include claims that have been dismissed with leave to amend denied. He must name proper defendants and specify the offending actions taken by a particular defendant. He must also sign the amended complaint and indicate the nature of the relief sought.

If Klaiber does not timely file an amended complaint, dismissal of any Section 1983 claims without prejudice will automatically convert to dismissal with prejudice and the Court will close this case. The Court further observes that, because Klaiber's allegations regarding his medical treatment sound exclusively in

---

[51] *See* LOCAL RULE OF COURT 5.1.

medical malpractice, he is free to bring such claims in a lawsuit in the appropriate state-court forum rather than in federal court. That is because this Court would lack subject matter jurisdiction over state-law claims where there is no federal anchor claim or diversity of citizenship of the parties.[52]

## IV. CONCLUSION

Based on the foregoing, the Court will dismiss Klaiber's Section 1983 claims pursuant to 28 U.S.C. § 1915A(b)(1) because he fails to state a claim upon which relief may be granted. The Court declines to exercise supplemental jurisdiction over Klaiber's related state-law claims. Leave to amend will be granted. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

52 *See generally* 28 U.S.C. §§ 1331, 1332.